THOMAS M. HERLIHY (SBN 83615)
JOHN C. FERRY (SBN 104411)
KELLY, HERLIHY & KLEIN LLP
44 Montgomery Street, Suite 2500
San Francisco, CA 94104-4798
Tel.: (415) 951-0535
Fax: (415) 391-7808
Email: herlihy@kelher.com
        jferry@kelher.com

Attorneys for Defendants
UNUM GROUP (formerly known as
UNUMPROVIDENT CORPORATION),
UNUM CORPORATION (a now non-existent
entity, properly referred to as Unum Group)
and UNUM LIFE INSURANCE COMPANY OF AMERICA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. BLAKE<br><br>                    Plaintiff,<br><br>            vs.<br><br>UNUMPROVIDENT CORPORATION;<br>UNUM CORPORATION, UNUM LIFE<br>INSURANCE COMPANY OF AMERICA,<br>MATHEW F. CARROLL, M.D., LYNETTE D.<br>RIVERS, PH.D., MARK W. BONDI, PH.D.,<br>COMMISSIONER OF THE CALIFORNIA<br>DEPARTMENT OF INSURANCE, and DOES<br>1 through 50 inclusive,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  C 07-05957 SC<br>(State Complaint Filed: October 16, 2007)<br><br>**THE CORPORATE DEFENDANTS'<br>POINTS AND AUTHORITIES IN<br>OPPOSITION TO PLAINTIFF'S<br>MOTION TO REMAND**<br><br>**Date:  February 8, 2008**<br>**Time:  10:00 a.m.**<br>**Court:  1**<br><br>**Trial Date:  Not Yet Set**<br><br>**The Honorable Samuel Conti**<br><br>Supporting Documents:<br><br>1.  Johnston Declaration;<br>2.  Ferry Declaration;<br>3.  Chidester Declaration;<br>4.  Objections and Motion to Strike<br>     Renner Declaration. |

# TABLE OF CONTENTS

Page(s):

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................. 1

III.    ARGUMENT ................................................................................................... 5

    A.    Plaintiff's Motion for Remand is Determined by the Allegations of Plaintiff's  Complaint at the Time of Removal and the Nature of the ERISA Policy at  Issue; Plaintiff's Limiting of Claims to Obtain Remand is Legally  Impermissible ...................................... 5

    B.    The MedAmerica Policy Covering All its Physicians and Employees is, Taken   as a Whole, an ERISA Plan. ........................................................................ 5

    C.    Plaintiff Has Standing To Bring An ERISA Claim. .......................................... 9

    D.    The Court Should Allow The Parties To Conduct Discovery If It Determines That The Record Is Inadequate To Make A Ruling. ....................................... 10

    E.    Remand Is Not Appropriate Under Any Circumstances Because Federal Question Jurisdiction Existed At the Time of Removal ............................................... 10

    F.    Plaintiff Asserts a Claim That "Relates To" an Employee Welfare Benefit Plan ............ 11

    G.    The Court Can Exercise Supplemental Jurisdiction over the Individual Defendants ....... 12

    H.    Any Potential Remand Should Extend Only to Plaintiff's Transactionally Separate Claims Against the Commissioner ................................................ 13

IV. CONCLUSION ................................................................................................. 14

**TABLE OF AUTHORITIES**

Page(s):

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*
451 U.S. 504 (1981)..................................................................................................... 11

*Greany v. Western Farm Bureau Life Ins. Co.*
973 F.2d 812 (9th Cir. 1992)) ...................................................................................... 8

*Harper v. American Chambers Life Ins. Co.*
898 F.2d 1432 (9th Cir. 1990) ................................................................................. 9, 10

*Int'l Ins. Co. v. Red and White Co.*
1994 U.S. Dist. LEXIS 18101, at *5 (N.D. Cal. 1994)................................................ 5

*Kanne v. Connecticut General Life Ins.*
867 F.2d 489 (9th Cir. 1988)) .................................................................................... 10

*Kennedy v. Allied Mutual Ins. Co.*
952 F.2d 262 (9th Cir. 1991) ................................................................................. 7, 12

*Kruso v. International Telephone & Telegraph Corp.*
872 F.2d 1416 (9th Cir. 1989) ..................................................................................... 5

*Laventure v. Prudential Ins. Co. of America*
237 F.3d 1042 (9th Cir. 2001) ................................................................................... 12

*Lee v. Am. National Ins. Co.*
260 F.3d 997 (9th Cir. 2001) ..................................................................................... 13

*Met. Life Ins. Co. v. Taylor*
481 U.S. 58 (1987)........................................................................................................ 5

*P.M. Group Life Ins. v. Western Growers Assur. Trust*
953 F.2d 543 (9th Cir. 1992) ..................................................................................... 11

*Parrino v. FHP, Inc.*
146 F.3d 699 (9th Cir. 1998) ....................................................................................... 5

*Peterson v. American Life & Health Ins. Co.*
48 F.3d 404 (9th Cir. 1995) ......................................................................................... 6

-ii-

*Qualls v. Blue Cross of Cal., Inc.*
    22 F.3d 839 n.4 (9th Cir. 1994) ................................................................................. 8

*Robertson v. Alexander Grant & Co.*
    798 F.2ed 868 (5th Cir. 1986) .................................................................................. 12

*Shaw v. Delta Airlines, Inc.*
    463 U.S. 85 (1983) ................................................................................................... 11

*Watson v. Proctor (In re Watson)*
    161 F.3d 593 (9th Cir. 1998) ................................................................................... 12

*Wisconsin Dept. of Corrections v. Schacht*
    524 U.S. 381 (1998) ................................................................................................ 13

*Yates v. Hendon*
    541 U.S. 1 (2004) ...................................................................................................... 6

*Zeiger v. Zeiger*
    131 F.3d 150 (9th Cir. 1997) ................................................................................... 12

**Statutes**

29 United States Code § 1002(1), (2) and (5) .............................................................. 11

29 United States Code § 1002(7), (8) .......................................................................... 11

29 United States Code § 1144(a) ................................................................................. 11

29 United States Code §1002(1) .................................................................................. 10

Article III" 28 USC §(a) .............................................................................................. 13

-iii-

1    Defendants, UNUM GROUP (formerly known as UNUMPROVIDENT

2    CORPORATION), UNUM CORPORATION (a corporation that on June 30, 1999 merged with

3    and into Provident Companies, Inc., which then amended its charter on June 30, 1999 to change

4    its name to UnumProvident Corporation, now known as Unum Group), THE PAUL REVERE

5    LIFE INSURANCE COMPANY and UNUM LIFE INSURANCE COMPANY OF AMERICA

6    (collectively "Corporate Defendants") hereby submit their points and authorities in opposition to

7    Plaintiff's motion to remand.

## I.  INTRODUCTION

9    This is an ERISA case.  The long term disability policy under which Plaintiff seeks

10   coverage, was issued to the MedAmerica, Inc. Long Term Disability Plan.  Only one disability

11   policy was issue to the Plan and it covered both owners and employees.  On this basis, the

12   Corporate Defendants removed this case because of federal jurisdiction and ERISA pre-emption.

13   Plaintiff premises his entire motion on a document that he does not authenticate, which

14   he concludes verifies that there were multiple disability insurance policies issued to MedAmerica

15   and that his separate policy only covered physician partners and that, as a consequence, his

16   policy is not governed by ERISA.  However, the only factual support for this argument is found

17   in an equivocal declaration that fails to identify the Plan, blatantly misidentifies the policy at

18   issue, and mischaracterizes the scope of coverage afforded thereunder.

19   The true facts are that the policy in effect when Plaintiff submitted his claim applied to

20   partners, physician employees and employees of the insured entity, and under the *Peterson* rule,

21   there is no doubt that the policy, and this case, are governed by ERISA.

## II.  STATEMENT OF FACTS

23   In 1999 Unum Life issued long term disability insurance policy number 543289 001 ("the

24   1999 Policy") to MedAmerica, Inc., Long Term Disability Plan. (Chidester and Johnston

25   Declarations, Exhibit B)  In 2002 the policy was amended and the new policy replaced the

26   original policy issued in 1999 ("the 2002 Policy). (Chidester and Johnston Declarations, Exhibit

27   A)  The 2002 Policy was the only disability policy in effect at the time Plaintiff submitted his

28   disability claim.

1    MedAmerica filed its Form 5500 and identified only one Plan and only one disability
2    policy – 543289 – which it stated covered 489 active participants. Form 5500 was executed by
3    Mr. Renner. (Ferry Decl., Ex. 1)

4        Both the 1999 and the 2002 Policy defined three groups that were eligible for coverage
5    as follows:

6            "Group 1 – Employees: All active full-time employees working a minimum of 30
7            hours per week and earning a minimum of $2,500 per month in active
8            employment.

9            Group 2 – Physician Employees: All active employees scheduled to work for a
10           minimum of 17.3 hours per week in active employment.

11           Group 3 – Partners: All Partners who meet the partnership criteria for California
12           Emergency Physicians Partnership and who work at least 17.3 hours per week in
13           active employment." (Please see Chidester Dec., ¶ 7; Johnston Dec., ¶ 6; Exhibit
14           A, page UAGP 01222; 01144)

15       Thus, the policy under which Plaintiff was covered also covered Employees and
16   Physician Employees, as well as Partners.

17       Plaintiff has alleged that he submitted his claim for disability benefits on June 25, 2005.
18   (Complaint, ¶ 33). Thus, the applicable policy is the 2002 Policy.

19       There is no question that MedAmerica understood, even back to the 1999 Policy, that it
20   was obtaining coverage for all classes of employees. On April 20, 1999 Unum wrote to
21   MedAmerica that: "This letter will confirm our willingness to administratively cover the
22   following physician employees working less than 17.3 hours per week." There follows a list of
23   employees covered by the 1999 Policy. (Chidester Dec. ¶ 8, Ex C, UAGP 01219)

24       Further, on June 4, 2004, Unum wrote to Chris Renner at MedAmerica, requesting a list
25   of all enrolled employees and specific information as to each, including the separate classes of
26   employees that are covered under the 2002 Policy. (Chidester Dec. ¶ 9, Ex D, UAGP 01334)

27       In response, MedAmerica submitted a census of its employees. (Chidester Dec. ¶ 11, Ex
28   E, UAGP 01383-01396) The census data identifies 433 personnel. The first 366 are not

-2-

1   identified by job class, but employees referenced as numbers 367-433 are specifically identified
2   as employees. (Chidester Dec., Ex E, UAGP 01394-96)
3         Thus, the policy expressly extends coverage to different classes of employees, and the
4   actual census data provided by MedAmerica identifies 66 individuals as employees. None are
5   identified as 'physician partners' and no attempt was made to distinguish between 'physician
6   partners' and 'physician employees.' Thus, there is no dispute that:
7         1. MedAmerica maintained only one Long Term Disability Plan;
8         2. The Corporate Defendants issued only one long term disability insurance policy to
9             MedAmerica; and
10        3. The long term disability insurance policy issued to MedAmerica covered employees,
11            physician employees and physician partners.
12        The only attempt Plaintiff makes to support his position is by the Renner Declaration.
13  However, for the following reasons, the Court cannot rely on this declaration.
14        First, the declaration does not even attempt to authenticate the document attached to the
15  complaint as Exhibit A which purports to be the policy at issue in this litigation. As Plaintiff's
16  entire motion is premised on the applicability of Exhibit A to this case, this is a fatal defect.
17        Second, the declaration does not reveal that the Complaint's Exhibit A – the 1999 Policy,
18  was replaced by the 2002 Policy. (Johnston Dec, ¶ 4)
19        Third, the declaration makes no attempt to explain or define the differences between the
20  three classes of employees. Nor does it provide any support for the contention (other than a
21  bald-faced assertion) that Dr. Blake must be categorized as a 'physician partner.'
22        Fourth, the declaration asserts that there were actually three separate policies, and that
23  only one (Policy No. 543289-031) applied to 'physician partners.' None of the purported
24  separate policies identified in the declaration (No. 543289-011 and No. 543289-021) are
25  attached, much less authenticated.
26        Fifth, the declaration makes no effort to distinguish between the Master Policy (the 2002
27  Policy) issued to the Plan and the separate certificates and plan booklets issued to the individual
28  insureds. Mr. Renner identifies himself as MedAmerica's Benefits Director (Renner Decl., ¶ 2)

-3-

1  and thus understands the distinction between the Master Policy issued to the policyholder and the

2  shorter summary documents delivered to the employees covered by the Plan.  His failure to

3  explicate this point undermines the credibility of his entire declaration.  Moreover, his

4  declaration contradicts the information he provided on Form 5500 which registered the

5  MedAmerica disability plan and the master policy.  (Ferry Decl., Ex 1)

6        Sixth, the declaration, rather than being presented on personal knowledge, actually rests

7  on the declarants 'understanding: "it was my understanding when we obtained Unum Policy No.

8  5432898-031 that it was for physician partners only and that is my understanding now."  This is

9  not sufficient to demonstrate that the declarant has personal knowledge regarding the actual

10  contents of the master policy. FRCP 56(e).  Moreover, his present "understanding" directly

11  contradicts the information he provided to Corporate Defendants (Chidester Decl., Ex E) and on

12  the Form 5500.  (Ferry Decl., Ex 1)  Renner's phrasing is deliberately vague.  He is well aware

13  that the three suffixes he references (011, 021, 031) do not represent separate policies, but rather

14  the summary booklets that separately set forth the coverage afforded to each of the three classes

15  of employee/owners.

16        Finally, the penultimate statement in the declaration (paragraph 7) that "Dr. Robert Blake

17  was a physician partner when the Unum Policy No. 543289-031 was in effect and was an insured

18  under this policy" is totally meaningless as it applies only to the document attached as Exhibit A

19  to the Complaint, which was demonstrably issued in 1999 and replaced by the 2002 Policy, and

20  which, in any event is not authenticated nor properly identified as the summary plan description

21  given to employees.

22        In sum, there was only one policy issued to MedAmerica and it covered everyone –

23  owners and individuals alike. Plaintiff's attempt to advance his separate summary plan

24  description as a unique policy to defeat ERISA governance fails.

25

26

27

28

## III.    ARGUMENT

**A.    Plaintiff's Motion for Remand is Determined by the Allegations of Plaintiff's Complaint at the Time of Removal and the Nature of the ERISA Policy at Issue; Plaintiff's Limiting of Claims to Obtain Remand is Legally Impermissible**

Whether an action should be remanded must be determined by reference to the complaint at the time the petition for removal was filed. *See Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *Int'l Ins. Co. v. Red and White Co.*, 1994 U.S. Dist. LEXIS 18101, at *5 (N.D. Cal. 1994) ("However, the right of removal is determined by reference to the complaint *at the time the removal petition was filed.*"). A party may not modify his complaint in an effort to support a remand motion. *See Kruso*, 872 F.2d at 1426 n.12 (refusing to consider allegations in an unfilled "Proposed First Amended Complaint" that was filed with plaintiff's motion for remand). As demonstrated, Plaintiff incorrectly asserts in his remand motion that the 1999 Policy afforded the coverage he seeks in this action. However, as set forth above, this is incorrect, as it was the 2002 Policy that was in effect when he made his disability claim in 2005 and as demonstrated herein, that policy was not exclusive to 'physician partners'.

Although Plaintiff has attempted to artfully plead around the existence of a policy or plan governed by ERISA, the Court must look beyond the Complaint at the substance of the claim, regardless of whether the complaint expressly references an ERISA plan, to determine whether an ERISA plan is in fact at issue. *See Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998)(affirming district court decision to deny remand because a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action are in fact necessarily federal claims). If a claim is based on a plan governed by ERISA, as here, removal is proper.

**B.    The MedAmerica Policy Covering All its Physicians and Employees is, Taken as a Whole, an ERISA Plan.**

Plaintiff argues that his status as a partner precludes the application of ERISA to any group policy issued to him. However, the law is clear that ERISA governs an "employee benefit

-5-

plan" that provides coverage to *both* employees and partners. *See Yates v. Hendon*, 541 U.S. 1, 6 (2004)("If the plan covers one or more employees other than the business owner and his or her spouse, the working owner may participate on equal terms with other plan participants. Such a working owner in common with other employees, qualifies for the protections ERISA affords plan participants and is governed by the rights and remedies ERISA specifies.").

The Department of Labor's (DOL) regulation defining an "employee" for "employee benefit plans" confirms that *any* plan in which common law employees participate is governed by ERISA. 29 C.F.R. 2510.3-3(b)("[a plan] under which one or more common law employees,...are participants covered under the plan, will be covered under Title I..."). In fact, according to this regulation, only one common law employee is required for a plan to be governed by ERISA. *Id.*

The Ninth Circuit has also addressed this issue and held that a policy that covers different groups of beneficiaries (owners, partners and employees) is sufficient to form an employee welfare benefit plan governed by ERISA. *See Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 407-08 (9th Cir. 1995).

In the *Petersen* case, plaintiff was a partner of a company, Quivira Marine Service Center (Quivira). Quivira applied for a short-term group policy with American Life & Health Ins. Co. (American) for plaintiff, his partner, and their sole employee. Shortly after the American policy issued, Quivira applied for and received a long-term policy with another insurer and moved coverage for plaintiff's partner and the employee to the new policy. However, plaintiff remained on the American policy because he failed a physical exam required by the new insurer. *See Petersen,* 48 F.3d at 406.

Plaintiff subsequently underwent emergency quintuple coronary bypass surgery and made a claim on the American policy, but his claim was denied. Plaintiff sued American in state court asserting a variety of state law causes of action, but American removed the action to federal district court and then moved to dismiss plaintiff's claims on the ground that the claims were preempted by ERISA. *See Petersen,* 48 F.3d at 406-07. Plaintiff moved to remand the

1  action to state court, alleging that the American policy was <u>not</u> a part of an ERISA plan. The

2  district court determined that ERISA governed the American policy and therefore preempted

3  plaintiff's state law claims. Accordingly, the district court denied plaintiff's motion to remand

4  and granted American's motion to dismiss. *See id.* at 407.

5      On appeal, the Ninth Circuit initially observed that the district court had correctly

6  determined that "the American policy was part of an 'employee welfare benefit plan' . . . and

7  that, as a 'beneficiary' of the policy, [plaintiff] had standing to bring a civil suit to enforce

8  ERISA." *See Petersen,* 48 F.3d at 407. Although the court acknowledged that an owner or a

9  partner of a business could not constitute an "employee" for purposes of determining whether an

10 ERISA plan exists, the court rejected plaintiff's contention that the policy was not part of an

11 ERISA plan at the time of his surgery, even though that policy only covered plaintiff as a partner

12 of Quivira at that time. *See id.* (citing 29 C.F.R. Section 2510.3-3(c)(1), (2)); *see also Kennedy*

13 *v. Allied Mutual Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991) (stating that a plan whose sole

14 beneficiaries are the company's owners does not constitute a plan under ERISA).

15     First, the court stated that "the fact that the American policy covered only a Quivira

16 partner at the time of [plaintiff's] surgery is not determinative [because] the American policy was

17 just one component of Quivira's employee benefit program and that the program, taken as a

18 whole, constitutes an ERISA plan. *See Petersen,* 48 F.3d at 407. Second, the court noted that at

19 all relevant times, Quivira provided "insurance to at least one non-partner employee, albeit not

20 under the American policy." *See id.* at 407-08; *see also Kennedy,* 952 F.2d at 264 (stating that

21 coverage of even one non-owner employee is sufficient to bring a policy within ERISA's scope).

22 Third, Quivira paid the insurance premiums for its employees and partners. Fourth, Quivira also

23 played an active role in administration of the insurance coverage. For example, Quivira (1)

24 selected the insurance coverage, (2) added and deleted employees and partners from different

25 types of coverage, (3) contacted insurance companies on behalf of its partners and employees;

26 and (4) distributed relevant information regarding insurance coverage. *See id.* at 408.

27     Finally, the court noted that the American policy originally covered a non-partner

28 employee in addition to plaintiff and his partner. Accordingly, the policy was governed by

1    ERISA because it was originally established and/or maintained by an employer to provide

2    medical insurance for its participants or beneficiaries. *See id.* Thus, it concluded that both

3    Quivira policies were governed by ERISA because they are *derived from ERISA plans* even after

4    conversion. *See id.* (emphasis added and citing *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839,

5    843 n.4 (9th Cir. 1994); *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817 (9th

6    Cir. 1992)).

7         Considering the foregoing factors, the *Peterson* court concluded that the American policy

8    was part of an ERISA plan and was therefore governed by ERISA. Specifically, the court noted

9    that Quivira purchased the policy "for the purpose of fulfilling its plan to provide benefits to its

10   employees as well as its partners. *See Petersen,* 48 F.3d at 408.

11        Here, *Peterson* is controlling authority and directly applicable to Plaintiff's case because

12   the facts are similar, if not more compelling than those in *Peterson.* First, like *Peterson*, the

13   controlling 2002 Policy covers multiple groups of beneficiaries, some partners and some non-

14   partners. Specifically, in Plaintiff's case, the groups of beneficiaries are designated as Group 1

15   for Employees; Group 2 for Physician Employees; and Group 3 for Partners. Second, at all

16   relevant times, the 2002 Policy provided coverage for at least one non-partner employee.

17   (Chidester Dec., Ex A) Third, MedAmerica apparently paid the insurance premiums for some of

18   the beneficiaries under the Policy. Fourth, as the organization managing the California

19   Emergency Physicians, Med America played an active role in administering insurance coverage

20   under the Policy. (Renner Dec., ¶ 3, 4; Ferry Dec., Ex 1) Thus, like *Peterson*, examples of Med

21   America's administration of the Policy include: (1) selecting appropriate insurance coverage for

22   its beneficiaries, (2) adding and deleting employees and partners from different levels of

23   coverage available under the Policy, (3) contacting insurance companies on behalf of its partners

24   and employees; and (4) distributing relevant information regarding insurance coverage. *See*

25   *Petersen,* 48 F.3d at 408. Finally, the Policy was established and/or maintained by MedAmerica

26   to provide disability insurance for its participants and beneficiaries.

27

28

1    In sum, the foregoing factors demonstrate that Plaintiff's mere status as a "partner" under

2    1 of 3 different groups of beneficiaries fails to establish that the Policy is not an ERISA

3    employee benefit plan.

4    Indeed, even if each group of beneficiaries was covered by separate policies (which is

5    not the case here) Plaintiff's policy would be just one component of MedAmerica's employee

6    benefit program.  Thus, that program, when taken as a whole, constitutes an ERISA plan.  *See*

7    *Petersen,* 48 F.3d at 406-08.  Accordingly, ERISA governs plaintiff's claim under the Policy.

8    **C.    Plaintiff Has Standing To Bring An ERISA Claim.**

9    To the extent that Plaintiff asserts that he lacks standing as a "partner" to bring an action

10    under ERISA for benefits, that assertion is without merit.  Specifically, citing its earlier decision

11    in *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432 (9th Cir. 1990), the *Peterson* Court

12    noted that it had already addressed the issue of whether a partner has standing to bring a civil

13    action to enforce ERISA.  Specifically, the *Peterson* Court stated that, although "a partner could

14    not bring a civil suit as a 'participant' because only employees are participants . . . a partner

15    could enjoy standing as a 'beneficiary.'" *See Petersen,* 48 F.3d at 408 (citing *Harper*, 898 F.2d at

16    1434).

17    Moreover, the *Peterson* Court concluded that "any person designated to receive benefits

18    from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA.  To hold

19    otherwise would create the anomaly of requiring some insureds to pursue benefit claims under

20    state law while requiring others covered by the identical policy to proceed under ERISA." *See*

21    *Petersen,* 48 F.3d at 409.  The Court also observed that such a scenario would "frustrate

22    Congress's intent of achieving uniformity in the law governing employment benefits" and that

23    "ERISA's plain language includes as beneficiaries not only those 'designated by a participant,'

24    but also those who are designated to receive benefits *by the terms of an employee benefit plan.*'"

25    *See id.* citing 29 U.S.C. Section 1002(8) (emphasis in original).

26    Accordingly, Plaintiff has standing as a *beneficiary* to bring a civil action to enforce

27    ERISA. *See Petersen,* 48 F.3d at 409, 412.

28

-9-

D.      **The Court Should Allow The Parties To Conduct Discovery If It Determines That The Record Is Inadequate To Make A Ruling.**

In *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432 (9th Cir. 1990), the court determined that the "scant record in this case supports neither of the parties' positions sufficiently. Nor can we say as a matter of law that the policy the partnership initially purchased in this case was not an ERISA plan or that the addition of [an employee] to the policy created an ERISA plan." *See id.* at 1433. Accordingly, the *Harper* court remanded the matter with instructions for the district court to make a factual determination of whether an ERISA plan existed under "all the surrounding facts and circumstances from the point of view of a reasonable person." *See id.* (citing *Kanne v. Connecticut General Life Ins.*, 867 F.2d 489, 492 (9th Cir. 1988)).

Here, in the event the record is not adequately developed, we should request that the court deny plaintiff's motion to remand *without prejudice* to allow the parties an adequate opportunity to conduct discovery on the issue of whether an ERISA plan exists under all the surrounding facts and circumstances. *See Harper*, 898 F.2d at 1433.

E.      **Remand Is Not Appropriate Under Any Circumstances Because Federal Question Jurisdiction Existed At the Time of Removal**

The 2002 Policy was issued to an "employee welfare benefit plan" within the meaning of ERISA. 29 U.S.C. §1002(1). Under ERISA, five criteria are required for a plan to constitute an employee welfare benefit plan:

(1) A plan, fund or program

(2) established or maintained

(3) by an employer or by an employee organization, or by both

(4) for the purpose of providing ... disability ... benefits

(5) to participants or their beneficiaries.

29 U.S.C. § 1002(1); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988); 29 U.S.C. § 1002. The 2002 Policy meets each of the above-listed criteria.

Criterion No. 1: A plan or program exists that sets forth the intended benefits, the intended beneficiaries, the source of financing, and a procedure to apply for and collect benefits

-10-

1  under the program. *See* Chidester and Johnston Decls., Exs. A and B. Further, MedAmerica

2  filed a Form 5500 that specified the details of the Plan. (Ferry Dec., Ex 1)

3        <u>Criterion No. 2</u>: MedAmerica "established or maintained" the Plan by purchasing the

4  group insurance policy issued by the Corporate Defendants. *See* Chidester and Johnston Decls.,

5  Ex. A and B; Ferry Dec. Ex 1 (Form 5500); Renner Decl, ¶¶ 4,5)

6        <u>Criteria Nos. 3 and 4</u>: MedAmerica is an employer that provided a benefit program to its

7  employees within the meaning of ERISA, 29 U.S.C. § 1002(1), (2) and (5). As evidenced by the

8  Certificate, the Plan was established by MedAmerica to provide, among other benefits, long-term

9  disability benefits to eligible MedAmerica employees and physicians. *See* Chidester and

10  Johnston Decls., Ex. A and B; Ferry Dec. Ex 1 (Form 5500); Renner Decl, ¶¶ 4,5)

11        <u>Criterion No. 5</u>: As a MedAmerica physician, Blake was a participant and beneficiary in

12  the Plan who might be entitled to disability benefits under the Plan. 29 U.S.C. § 1002(7), (8).

13  *See*, Complaint, ¶¶ 28 and 33.

14      **F.**    **Plaintiff Asserts a Claim That "Relates To" an Employee Welfare Benefit**

15             **Plan**

16        ERISA's preemption clause is broad in its force and effect:

17

18        Except as provided in subsection (b) of this section, the provisions of this
      subchapter and subchapter III of this chapter shall supersede any and all State

19        laws insofar as they may now or hereafter relate to any employee benefit plan.

20  29 U.S.C. § 1144(a); *see, e.g., Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510

21  (1981) (ERISA preemption clause to be construed broadly); *P.M. Group Life Ins. v.*

22  *Western Growers Assur. Trust*, 953 F.2d 543, 545 (9th Cir. 1992). Under ERISA, the

23  central question is whether the state law claim "relates to" an employee benefit plan. If it

24  does, the state law cause of action is preempted. In *Shaw v. Delta Airlines, Inc.,* 463 U.S.

25  85, 97 (1983), the phrase "relates to" was given its broad common-sense meaning, such

26  that a state law relates to an employee benefit plan "in the normal sense of the phrase, if it

27  has a connection with or reference to such a plan."

28        Plaintiff's claims arise directly out of his efforts to obtain disability benefits due to his

1  alleged post traumatic stress disorder. Complaint, ¶ 31. The Corporate Defendants denied

2  Plaintiff's claim for disability under the Plan. Thus, Plaintiff's claims undeniably has a

3  "connection with" the Plan because the Plan provides for benefits which are insured by the 2002

4  Policy. Plaintiff's claims also have a "reference to" the Plan, in that his Complaint concerns the

5  long-term disability coverage at issue. Complaint, ¶ 33.

6      The authority cited by Plaintiff bears no relationship to the actual facts before the Court.

7  Those cases, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) and *Laventure v.*

8  *Prudential Ins. Co. of America*, 237 F.3d 1042 (9th Cir. 2001) only addressed the situation

9  presented by a Plan that only had one participant – the owner. That is most demonstrably not the

10  situation herein.

11      Plaintiff also advances *Zeiger v. Zeiger*, 131 F.3d 150 (9th Cir. 1997) but that provides

12  even less support. It concerned a separate profit-sharing plan for the company's co-owners and a

13  401K plan for its employees. These were separate plans that were always separately maintained.

14  That is not the issue here, where there is one disability policy. Similar lack of support is

15  presented by *Watson v. Proctor (In re Watson)* 161 F.3d 593 (9th Cir. 1998) which was a

16  bankruptcy case that found that there a benefit program that covered a single nurse employee did

17  not convert a profit sharing plan that applied to the company's owner into an ERISA plan.

18  Again, there is no correlation to the facts presented herein.

19      Finally, the Plaintiff advances *Robertson v. Alexander Grant & Co.*, 798 F.2ed 868 (5th

20  Cir. 1986) but the court in that case noted that there were separate plans that did not provide

21  coverage to the participants of the other plan. Whereas here, there is only one plan, that provides

22  coverage to physicians, physician employees and employees.

23      Consequently, none of Plaintiff's authorities provide any support for his position.

24  **G.      The Court Can Exercise Supplemental Jurisdiction over the Individual**
25  **        Defendants**

26      Plaintiff has also named three doctors as co-defendants. The claims against the

27  individuals are all directly related to the claims asserted against the Corporate Defendants and

28  arise from the same transactions and events. The Fourth Cause of Action alleges that the

-12-

1   individual doctors conspired with the Corporate Defendants to intentionally inflict emotional

2   distress on the Plaintiff by depriving him of the benefits of the policy. (¶¶ 70-73)  The Fifth

3   Cause of Action alleges that the individual doctors induced the Corporate Defendants to breach

4   the insurance contract. (¶¶ 84-85)   The Sixth Cause of Action alleges that the individual doctors

5   intentionally interfered with Plaintiff's insurance contract. (¶¶ 88-89)  Thus, all the claims

6   against the individual defendants "form part of the same case or controversy under Article III"

7   28 USC §(a) and trigger supplemental jurisdiction.

8          Indeed, Plaintiff has not even argued to the contrary.

9   **H.    Any Potential Remand Should Extend Only to Plaintiff's Transactionally
10         Separate Claims Against the Commissioner**

11         Plaintiff argues that the presence of the Commission in this action supports remand,

12  arguing that there is no diversity jurisdiction.  However, this case was removed pursuant to

13  federal jurisdiction and the appropriate remedy for the sham allegations against the

14  Commissioner is to remand only Plaintiff's claims against the Commissioner. *See Wisconsin*

15  *Dept. of Corrections v. Schacht*, 524 U.S. 381, 392 (1998)(remand of claims barred by the

16  Eleventh Amendment "does not destroy removal jurisdiction over the remaining claims in the

17  case" and the district court may retain jurisdiction to hear non-barred claims).  In *Lee v. Am.*

18  *National Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001), the Ninth Circuit concluded that a district

19  court may hear non-barred claims and cannot "remand a case in its entirely where there is subject

20  matter jurisdiction over some portion of it."  A properly removed case may "be split up when it

21  is subsequently determined that some claims cannot be adjudicated in federal court"; the

22  preference for judicial economy does not "override the language of section 1447(c) proscribing a

23  remand of the entire case when there is subject matter jurisdiction over some of it." *Lee*, 260

24  F.3d at 1007.

25         Plaintiff's seventh cause of action against the Commissioner relates to the alleged duties

26  of the Insurance Commission and bear no relation to the actual facts pled in the Complaint

27  against the Corporate Defendants.  As such, they can be severed from the Complaint and

28  remanded to state court.   The claims against the Corporate Defendants arise out of and are

-13-

CORPORATE DEFENDANTS' BRIEF RE REMAND MOTION

CASE NO. C 07-05957 SC

1  transactionally related to the ERISA policy alleged in Plaintiff's Complaint.  These claims
2  pertain to a specific individual and the specific decision to terminate disability benefits.  The
3  allegations against the Commissioner are that the Commissioner did not act in accordance with
4  insurance statutes when the DOI approved the policy many years ago and did not exercise the
5  Department's core functions adequately.  There is no nexus between Plaintiff's disability claim
6  and the claims against the Commissioner.

7      Consequently, this Court should retain jurisdiction over the actual ERISA claims and
8  remand only the causes of action asserted against the Commissioner, which are transactionally
9  unrelated to the underlying disability claim issues.

## IV. CONCLUSION

For the reasons stated herein, the Corporate Defendants respectfully request that this
Court deny the motion to remand.  The Court may, as appropriate remand the seventh cause of
action against the Insurance Commissioner to state court and exercise its supplemental
jurisdiction over the individual defendants.  In the alternative, in the event that the Court
determines that there is an insufficient factual record upon which to base a determination, the
Corporate Defendants request that the Court deny the motion without prejudice to allow the
parties to conduct the appropriate discovery.


                    KELLY, HERLIHY & KLEIN LLP


Dated: January 18, 2008          By_____/s/_____
                                          John C. Ferry
                                    Attorneys for Defendants
                          UNUM GROUP (formerly known as UNUMPROVIDENT
                              CORPORATION), UNUM CORPORATION,
                          THE PAUL REVERE LIFE INSURANCE COMPANY and
                          UNUM LIFE INSURANCE COMPANY OF AMERICA

E:\27261\P07doc


                              -14-